# UNITED STATES DISTRICT COURT

## IN THE EASTERN DISTRICT OF MICHIGAN

In the matter of:

JIL GORDON, MARCY GOYETTE and WENDELL
SCHUEMANN for themselves and similarly situated
Michigan residents

               Plaintiffs,                             Case No.

v.                                           Hon.

                                                 **PROPOSED CLASS ACTION**

CAVALRY SPV I, LLC,
CAVALRY PORTFOLIO SERVICES, LLC,
ROOSEN, VARCHETTI & OLIVIER, PLLC and
RICHARD ROOSEN.

               Defendant(s).

_____/

## COMPLAINT AND JURY DEMAND

      NOW COME the Plaintiffs**, JIL GORDON** ("Plaintiff" or "Gordon" or "Plaintiffs") and

**MARCY GOYETTE** ("Plaintiff" or Goyette" or "Plaintiffs") and **WENDELL SCHUEMANN**

("Shuemann" or (Plaintiff")by and through counsel, The Law Offices of Nicholas Reyna, P.C.

and Co-Counsel, The Law Offices of Brian P. Parker, P.C. and bring this action on behalf of

themselves against the Defendants **CAVALRY SPV I, LLC** ("Cavalry") and **CAVALRY**

**PORTFOLIO SERVICES, LLC,** ("CPS"), **ROOSEN, VARCHETTI & OLIVIER, PLLC**

("Roosen") and RICHARD ROOSEN ("Mr. Roosen") as a debt collector and signor on all of the

State Collection lawsuits referenced below and alleging the following:

### I.   PRELIMINARY STATEMENT OUTLINING DEFENDANTS' FALSE DEBT OWNERSHIP MISREPRESENTATIONS AS PART OF A COMMON PLAN/SCHEME TO SUE MICHIGAN RESIDENTS ON CITIBANK DEBT WITHOUT PRESENT OR FUTURE PROOF TO GO TO TRIAL

1.

Plaintiff brings this action for damages and injunctive relief based upon the Defendants'

violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* and The

Regulation of Collection Practices Act (RCPA), and codified at MCL 445.251 et seq. and the

Michigan Occupation Code ("MOC"), MCL 339.901 et seq;

2.

**STATEWIDE ALLEGATIONS AGAINST THE DEFENDANTS**

As part of a STATEWIDE scheme in all 83 Counties of the State of Michigan and as

shown in the template State Court "CITIBANK" collection lawsuits at **Exhibit 1 (Gordon),**

**Exhibit 2 (Goyette) and Exhibit 3, (Schuemann)**, the Defendants are mutually engaged in the

filing of false collection lawsuits for false amounts against Michigan resident debtors with false

ownership claims *where*:

- Defendant Roosens for themselves and Cavalry files the same formulaic (exhibits
  and lack of proof evidence of this allegation) and computer template complaint and
  attaching exhibits that lack both meaningful attorney file review and any proof of
  ownership of the debt by Cavalry.

- Beyond a "Bill of Sale and Assignment" attached to the State Collection Complaint
  that shows no "Sale" or "Assignment" of the Specific debt or collection rights
  Cavalry and the Roosens are suing the consumer upon, there is no specific proof or
  necessary evidence attached to the State Collection Lawsuits that shows the
  SPECIFIC CITIBANK Account was sold to Cavalry SPV I, LLC; and

- The Defendants Misrepresented the Amount owed on the debt and provide no proof
  the amount or debt is owed to Defendant Cavalry; and

- The amounts alleged to be owed in the State Collection Lawsuits against Michigan residents are not authorized by any agreement and the State Collection Lawsuits are filed and signed by Mr. Roosen for Defendant Roosen without any review of the credit cardholder agreement that Defend Cavalry and Roosen fail to attach to the complaints; and

- Defendant and Roosen are engaged in a State-wide scheme to file similar State Collection lawsuits without the necessary proof of ownership and meaningful attorney review prior to signing and filing of the lawsuits which seek false amounts with no card holder agreement authorization; and

- In these Michigan collection cases, there is no valid assignment between Citibank and Cavalry SPV for the SPECIFIC debt the Cavalry Attorney Network signs the lawsuit for and sues upon on behalf of the Defendants.

- Defendants know they cannot make out a prima facie case in these State Collection Lawsuits that can demonstrate the existence of any ownership of the SPECIFIC DEBT sued upon at the State level and Defendants know they lack standing to sue while seeking to use a collection lawsuit to obtain a settlement or default against Michigan Consumers.

3.

Defendants Cavalry and CPS submit false, or deceptive lawsuits to state and local courts through Defendant law firms like Defendant Roosen in order to obtain thousands of default judgments against consumers for phantom debts or debts Cavalry does not have standing to pursue. In fact, most if not all of the judgments procured by Cavalry are default judgments, as few consumers in similar debt collection cases take the necessary steps via litigation to adequately

defend themselves.1

4.

A State Court's power to issue a final judgment such as a default judgment may only be invoked upon a foundation of admissible evidence.   In most consumer debt-collection cases, the underlying documentation concerning a purported debt has been generated by the credit-issuer's computer system, and is therefore hearsay under state law throughout the nation.

5.

Defendants are aware that significant inaccuracies may exist in the sale files of debts that Cavalry purchases that are bought in large portfolios for pennies on the dollar while using Roosen lawsuits to collect the full amount of the debt plus attorney fees, interest, and costs.2

6.

---

1 https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protectionstaff-report-repairing-broken-system-protecting/debtcollectionreport.pdf See, e.g., Abrams, Tr. V at 18 (well over 60%); Buckles, Tr. I at 24 (85%); Domestic Policy Subcommittee Minority Staff Report of the House Oversight and Government Reform Committee (Domestic Policy Minority Staff) Comment, 3-4 (80% in New York City and Massachusetts, citing Urban Justice Center, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor, 1 (Oct. 2007), available at www.urbanjustice.org/cdp); Evans, Tr. V at 19 (70-80%); Fisher, Tr. V at 193 (70%); Groves, Tr. V at 22-3 (80- 90%); Lipman, Tr. I at 21-2 (85-90%); MFY Legal Services (MFY) Comment at 1-2 (90% of New York City debtors fail to answer in suits filed by seven largest debt collection law firms, citing MFY's 2008 report, Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York, available at http://www.mfy.org/Justice_Disserved.pdf); Moiseev, Tr. I at 21 (85-90%); Moore, Tr. IV at 18 (80% based on California Creditors' Bar Association informal survey); Neighborhood Economic Development Advocacy Project (NEDAP) Comment at 2 (75% default rate in New York City and 90% rate of failure to answer collection suit); Redmond, Tr. V at 22 (percentage is "certainly very high"); Surh, Tr. IV at 55 (95%); The Legal Aid Society, Neighborhood Economic Development Advocacy Project, MFY Legal Services, and Urban Justice Center – Community Development Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010), 8, available at http://www.nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf (hereinafter Debt Deception) (finding among 336 collection cases brought by the 26 most litigious debt buyers in New York City that 81% of cases initially resulted in default judgments for the debt buyers); but see also Moore, Tr. IV at 151 (95% of cases that go to judgment are by default)

2 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Consumer Financial Protection Bureau, The Consumer Credit Card Market (Dec. 2015); Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (Jan. 2013).

Without sufficient account-level documentation- or access to anyone with personal knowledge of a consumer's account- the Defendants Cavalry, CPS and Roosen know they cannot make out a prima facie case demonstrating the existence of any of its' CITBANK consumer debts to have standing or at any time in the judicial collection process through trial.

7.

Defendant Cavalry and CPS goal is to obtain a default judgment through their Attorney Network of attorneys like Roosen on deficient pleadings that show no definitive legal proof of standing and are otherwise insufficient as proof to take to trial.

8.

The Defendants' lawsuits lack any proof or contractual basis to give the Defendants standing or to find Plaintiffs liable for a debt Cavalry never intends to prove it owns or is able to show paperwork that the CITIBANK debt is owed by the consumer in the collection lawsuit in state court (*see Exhibits 1-3).*

9.

Defendants violate Federal and Michigan law by deceiving Michigan residents into paying a debt or being defaulted in State courts where Cavalry lacks ownership and/or proof of ownership to sue on a debt through collection lawsuits with material and false representations in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (5), § 1692e (9), §1692f, § 1692d, MCL 339.915(a), 339.915(b), 339.915(d), 339.915(e), 339.915(f), 339.915(n), 339.915(q), 339.915a(d) 339.915(f), MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).3

---

3  https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Mary Spector, "Debts,
Defaults, and Details: Exploring the Impact of Debt Collection Litigation on Consumers and Courts," 6 Va. L. &
Bus. Rev. 257, 288 (2011) (77% default rate in Dallas County); Claudia Wilner and Nasoan Sheftel-Gomes,

10.

Plaintiffs have suffered damages in that they must now find an attorney at great time and expense to defend against a fraudulently-initiated lawsuit and damage to their credit history and reputation by Defendants with collection attempts through bogus lawsuits that lack standing and proof to hold her liable and Plaintiffs are thusly entitled to a recovery against the Defendants under the FDCPA, MOC and RCPA (*Exhibit 4-7 Plaintiffs' Affidavits).*

## **II. PARTIES**

11.

Plaintiffs are each consumer residing, respectively, in Ann Arbor (Gordon), Saline (Goyette) and Battlecreek (Schuemann). Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3). Plaintiffs are consumers under the FDCPA, MOC and RCPA.

12.

Defendant Cavalry SPV I, LLC is a foreign corporation located in the State of New York and a debt collector whose principle purpose is to purchase and collect large portfolios of defaulted consumer receivables under 15 U.S.C. 1692a (6) and whose principal business purpose is the collection of defaulted debts. Defendant Cavalry collects and services the debts through its servicing arm, Cavalry Portfolio Services, LLC (CPS) and local attorneys by filing collection lawsuits supported by false and hearsay Affidavits throughout the State of Michigan. Please see **Exhibits 1-3** which exemplify the template lawsuit filed as a collection attempt.   Cavalry has a resident agent address in Wayne County, State of Michigan.

---

Neighborhood Economic Development Advocacy Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Low Income New Yorkers (2010) (81% default rates in New York City); Federal Trade Commission, Repairing a Broken System 7 (July 2010) ("panelists from throughout the country estimated that sixty percent to ninety-five percent of consumer debt collection lawsuits result in defaults, with most panelists indicating that the rate in their jurisdictions was close to ninety percent") and 7 n.18 (collecting studies on default rates)

13.

Defendant CPS is a servicer for Defendant Cavalry and a Foreign Corporation and debt collector of defaulted debts under 15 U.S.C. 1692a (6) and who "regularly collects or attempts to collect…debts owed or due…another" and who will sign off on collection attempts through collection lawsuits that use false lawsuits signed by attorneys without meaningful review of the lawsuit they sign off on throughout the 83 counties in the State of Michigan. **Please see Exhibits 1-3**. CPS has a resident agent address in Wayne County, State of Michigan.

14.

Defendant Roosen, Varchetti & Olivier, PLLC. ("Roosen") is a law firm organized as a Michigan professional corporation with principal offices at 39541 Garfield, Clinton Township, MI 48038. Roosen is a law firm collection agency collecting CITIBANK debt for CAVALRY entities and CPS under the FDCPA, RCPA and MOC. The alleged debt being collected by ROOSEN is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a). ROOSEN is a "collection agency" and/or "licensee" as the terms are defined and used in the MOC.

15.

Defendant Richard Roosen ("Mr. Roosen") is a debt collector, Partner of the Roosen law firm Defendant and signor of State Collection Lawsuits in the State of Michigan and located at 39541 Garfield, Clinton Township, MI 48038. Mr. Roosen is collecting CITIBANK debt for CAVALRY entities and CPS under the FDCPA, RCPA and MOC. The alleged debt being collected by MR. ROOSEN is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a). Mr. Roosen is a "collection agency" and/or "licensee" as the terms are defined and used in the MOC.

### III. JURISDICTION AND VENUE

16.

Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337. This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. §1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

17.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be 2:17-cv-12173-GAD-RSW Doc # 1 Filed 07/05/17 Pg. 7 of 25 Pg. ID 78 addressed separately").

18.

Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

### IV. STATUTORY STRUCTURE- FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

19.

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are

not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692. Plaintiffs are consumers. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

20.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5).

21.

Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a (6). All Defendants are debt collectors. The Defendants regularly attempt to collect consumer debts "owned" by Defendant Cavalry.

22.

The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation.   Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

23.

Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Wallace v. Washington Mutual Bank*, 683 F.3d. 323, 327 (6th Cir. 2012), *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006).

24.

Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1) -(16). Among the *per se* violations prohibited by that section are using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

## V. REGULATION OF MICHIGAN COLLECTION PRACTICES ACT (RCPA)

25.

The Michigan Consumer Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

26.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

27.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim.

28.

Defendants are regulated agencies under the RCPA. See *Misleh* v *Timothy E. Baxter & Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp. 2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co.,* LLC, 886 F. Supp.2d 591 - Dist. Court, ED Michigan 2012.

29.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium.

30.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt.

31.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or transferor of the debt shall continue to be considered the creditor or the principal for purposes of this act.

32.

"Person" means an individual, sole proprietorship, partnership, association, or corporation. Defendants each represent regulated persons under § 445.251(g)(xi).

33.

The Defendants are violating the following RCPA subsections:

**445.252 Prohibited Acts**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau;

(b) Using forms or instruments which simulate the appearance of judicial process; and

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a

communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

> (i) The legal status of a legal action being taken or threatened.
> (ii) The legal rights of the creditor or debtor.
> (iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

(n) Using a harassing, oppressive, or abusive method to collect a debt…

(q) Failing to implement a procedure designed to prevent a violation by an employee.

## MICHIGAN OCCUPATIONAL CODE (MOC)
### 34.

The Michigan Occupational Code (MOC), MCL 339.901 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines and requires that collection agencies are licensed in the State of Michigan unless their collection activities are exclusively limited to interstate activities.

### 35.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

### 36.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or

repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim. Defendants are collection agencies as stated in their own websites and letters.

37.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium. Defendants are communicating with Michigan consumers through letters and by lawsuits. See Defendants' own lawsuits against debtors in Michigan alleging this.

38.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt. Plaintiff is a consumer under the MOC.

39.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does

not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor.

40.

The MOC's reference to "[a]n attorney handling claims and collections on behalf of a client and in the attorney's own name," is better understood as encompassing *both* attorneys who handle claims and collections on behalf of a client *and* attorneys who seek to collect a debt owed to themselves or their firms. *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 - Dist. Court, ED Michigan 2011.

41.

Even if the person, corporation, entity or business such as Defendants is not required to be licensed under MCL 339.901 et seq. the MOC does require Defendant are subject to the "other requirements that regulate collection practices" under MCL 339.904(2).

42.

Defendants are violating the following MOC subsections under MCL 339.915:

**339.915 Licensee; prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or the stationery of a credit bureau unless it is disclosed that it is the collection department of the credit bureau.

(b) Using forms or instruments which simulate the appearance of judicial process.

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

(f) Misrepresenting in a communication with a debtor any of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property.

(n) Using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at unusual times or places which are known to be inconvenient to the debtor. All communications shall be made from 8 a.m. to 9 p.m. unless the debtor expressly agrees in writing to communications at another time. All telephone communications made from 9 p.m. to 8 a.m. shall be presumed to be made at an inconvenient time in the absence of facts to the contrary.

(q) Failing to implement a procedure designed to prevent a violation by an employee.

43.

*Both Defendant Roosens* are filing claims for collections, sharing office space and resources in collecting debts from Michigan consumers and identifying themselves as attorneys in communications through "Cavalry" lawsuits and letters for Defendant Cavalry and CPS and are violating the following MOC subsections under MCL 339.915a:

**339.915a**

(a) Listing the name of an attorney in a written or oral communication, collection letter, or publication.

(b) Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another.

(d) Employing or retaining an attorney to collect a claim. A licensee may exercise authority on behalf of a creditor to employ the service of an attorney if the creditor has specifically authorized the collection agency in writing to do so and the licensee's course of conduct is at all times consistent with a true relationship of attorney and client between the attorney and the creditor. After referral to an attorney, the creditor shall be the client of the attorney, and the licensee shall not represent the client in court. The licensee may act as an agent of the creditor in dealing with the attorney only if the creditor has specifically authorized the licensee to do so in writing.

(f) Soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court.

44.

The Plaintiff seeks INJUNCTIVE RELIEF AND ACTUAL DAMAGES, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a

Class Action context, pursuant to the MOC and the RCPA and all other common law or statutory regimes. The Plaintiff requests that he be awarded:

    a.   Statutory and Actual Damages,

    b.   Injunctive Relief stopping Defendants from continuing their plan and scheme through letters and debt collection lawsuits as alleged here

    c.   Attorney fees and costs under the MOC and RCPA.

45.

The RCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

46.

In a Class Action Judgment, the Plaintiffs seek Statutory Damages, ACTUAL DAMAGES, INJUNCTIVE RELIEF, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court pursuant to the FDCPA, MOC and the RCPA and all other common law or statutory regimes.

## VI. FACTUAL ALLEGATIONS

47.

CITIBANK sold the collection rights of a large portfolio of defaulted and charged off debt to CAVALRY.   CAVALRY buys this kind of debt as pursuant to its principal business purpose of the collection of debts.

48.

In **Exhibits 1-3**, CAVALRY and CPS hired the ROOSEN Defendants to file collection lawsuits against Michigan residents such as the three Plaintiffs here.

49.

Defendant Cavalry purchases the collection rights of CITIBANK debt in bulk portfolios with little or any proof of debtor ownership. Prior to purchase, information about the relevant portfolio of alleged debts is transmitted to Cavalry SPV I, LLC in a computerized summary which CPS then collects and services through the Cavalry Attorney Network in the State of Michigan. Cavalry and CPS then provide Michigan attorneys like Defendant Roosens. Sales Documents and "proof" to file lawsuits to collect on the debt. **See examples of the collection lawsuits filed throughout the State of Michigan at Exhibit 1-3**.

50.

At the time Cavalry completes a purchase of the Citibank collection rights at a hugely discounted price, Cavalry and Roosen are on notice that the electronic spreadsheet submitted to Cavalry is replete with inaccuracies and the Defendants lack the necessary proof that buying debts for pennies on the dollar would encompass.

51.

Defendant Cavalry buys the debt through purchase agreements referenced in **Exhibits 1-3** that disavow responsibility for the accuracy of the data contained in the spreadsheet accompanying the portfolio purchase. The FULL AND COMPLETE purchase/sale agreements of the portfolio debt purchase are never attached to the lawsuits against Michigan residents.

52.

No representations are made by the seller of the debts (Citibank) to Cavalry regarding the accuracy of the information transferred in any sale. Defendant Cavalry, CPS, and the ROOSEN Defendants purposely leaves the purchase agreement off the Exhibits to the underlying state court complaints to avoid the evidentiary scrutiny attendant with the accuracy issues that would follow.

53.

The minimal information obtained by Defendant Cavalry through the purchase of a portfolio of consumer debts is not sufficient to establish

- the validity of the debt, Plaintiffs (purportedly) owing the debt to Cavalry, or

- the calculation of the balance claimed, and

- it certainly is not sufficient to support a Michigan court finding that the consumer owes the debt.

Cavalry and CPS are aware of this deficiency but instructs their attorney clients like the Roosen Defendants to file the lawsuits anyway whose only intent is to obtain a default with false allegations in lawsuits that avoid ownership standing or the burden of proof *(Exhibit 1-3) necessary to win at trial*.

54.

While fully aware that it cannot demonstrate the evidentiary existence of any of the debts that it has sued upon, let alone the exact amount possibly owed thereupon, Cavalry, CPS and their Defendant attorneys file "computer template" collection lawsuits with the use of false allegations and missing paperwork WITHOUT meaningful attorney review by the attorney ( "Roosen and the Roosen law firm") that signs them. Further, there is no proof that Cavalry are

the are owners of the debt of the SPECIFIC STATE DEBTOR (like each respective Plaintiff. (*please see Exhibits 1-4).*

55.

As the written paperwork attached to the lawsuits at **Exhibits 1-3** reveal, Cavalry's sole intention is to avoid evidentiary scrutiny and seek default judgments without ever having had admissible prima facie evidence to substantiate its claims in court at trial.

56.

Upon information and belief, at least 45% to 90% of the lawsuits that Cavalry files against consumers like the Plaintiffs ultimately result in default judgments. This is because the vast majority of the legal actions that Defendant files go uncontested, allowing Cavalry to collect on alleged debts that either are invalid or have an improperly inflated face value.

57.

Defendants Custodian of Records have not reviewed account-level documentation (from the Creditor Citibank) as nothing in the to the lawsuits (*Exhibit 1-3*) states anything about the information provided or the authenticity of documents from Citibank, N.A. or attach anything corroborating their false representations when the Attorney signs off on "fill in the blank" type hearsay *computer generated complaint* filed in this case against each respective Plaintiff.

58.

Defendants take advantage of the fact that, under most states' civil procedure law, the public employees who oversee the default-judgment process engage in a largely ministerial function, relying upon the representations and certifications of the debt collectors and attorneys like Mr. Roosen who practice before the court. Given that tens of thousands of such lawsuits are filed every year, judicial system personnel would be overwhelmed if they had to investigate the

validity of each and every default judgment application. So, the courts rely upon the signature of Defendant, Richard Roosen. (*Exhibit 1-3*).

59.

The lawsuits filed by the Roosen Defendants are all the same, have the same or similar paperwork attached and all lack any proof that CAVALRY owns the specific debt being sued upon. **(See the same lawsuits with the same pleading and similar paperwork attached of Plaintiffs' collection lawsuits at *Exhibit 1-3*).**

60.

There are no attached Credit Card Agreements attached with the actual specific debts of the state collection lawsuit debtors being sued in the template collection lawsuits. To make up for the lack of proper proof and lack of credit card agreements, Defendants create the false collection lawsuit and create the false impression that Cavalry and their attorneys have a right to collect and sue the State Defendants and receive a Default Judgment with a complaint and file going unreviewed by the attorney signing the complaint.

61.

Defendants file collection lawsuits even though there is no non-hearsay or independent proof this amount is owed to the Defendants. Defendant Roosen admits it has not reviewed the Credit Card Agreement that would authorize the amount it seeks from debtors in State Collection cases when it states that the written instrument the case is based upon is in the possession of the adverse party in every case it files with the same template language:

**COMPLAINT**

NOW COMES Plaintiff, Cavalry SPV I, LLC assignee of Citibank, N.A. , by and
~gh its attorneys ROOSEN, VARCHETTI & OLIVIER, PLLC. and for its Complaint states
s Honorable Court as follows:
1.   Defendant(s) entered into a Contract with Plaintiff or Plaintiff's Assignor, the
     account/loan number of which is:*************9169, and pursuant to MCR
     2.113(F)(1)(b) Plaintiff's claim is based on a written instrument which is not
     attached as it is in the possession of the adverse party.
2.   Defendant(s) defaulted under the terms and condit

62.

Plaintiffs are informed and believe, and on that basis, allege, that the Defendant Roosens

have a policy and practice of filing computer-generated, mass-produced collection lawsuits in

State Courts – in the form of the **Exhibit 1-3**-- ***without any meaningful attorney file review or***

***involvement*** prior to the filing of the lawsuits in violation of 15 U.S.C. §§ 1692e (3) and 15

U.S.C. §§ 1692e (10). **Exhibit 1-3** are typical of the type of collection lawsuits the Roosen

Defendants are filing throughout the state with no assignments, debt proof or evidentiary

documents specific to the debt of the debtors they sue in Michigan Courts.

63.

Defendants are filing these collection lawsuits seeking false debt amounts in the pleadings

without a certified or other properly authenticated copy of each bill of sale, credit card holder

agreement or other document evidencing and authorizing the amount sought in the State

Collection Lawsuit.

64.

The Cavalry collection lawsuits were computer generated by rote and created by non-

attorney employees of Cavalry, CPS or Roosen without any meaningful or substantive review of

the debtor file by any Cavalry or Roosen Attorney that signs off on the complaints." *Kistner v.*

*Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir.

2008).

65.

Defendants' scheme and plan to both, eliminate the rights of consumers' ability to defend themselves and convince a State Court that a Default and Default Judgement is warranted on the merits of a false complaint, false pleading and false debt amounts is not complete or possible without the attorneys from Defendant Roosen signing off on the whole thing (*Exhibit 1-3*).

66.

The wrongful acts of Defendants consisted of the use of uniform and deceptive and misleading collection lawsuits and pleadings by Defendants. Nothing is more material to the least sophisticated consumer than how it's reaction is shaped and changed by deceptive and misleading pleadings and supporting paperwork that causes final harm and emotional distress with lawsuits that appear to have court certification because of the appearance of the attorney.

67.

But for the material misrepresentations of the Roosen Defendants for Cavalry through false allegations and missing paperwork, there is no proof that Cavalry has the right to sue the Plaintiffs specifically or the Plaintiff class generally for these credit card debts. Michigan consumers are forced to defend themselves against a debt collector suing them with false information. (*Exhibits 1-3).*

68.

In these Michigan collection cases, there is no valid assignment between Citibank and Cavalry SPV for the SPECIFIC debt the Michigan Attorney Network signs the lawsuit for and sues upon on behalf of the Defendants.   However, to constitute a valid assignment there must be a perfected transaction between the parties which is intended to vest in the assignee a present right in the thing assigned.   *Weston v. Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987). There are no assignments under Michigan law in **Exhibit 1-3**.

69.

The Michigan Court of Appeals stated that Michigan's statute of frauds still requires that

an assignment of debt be in writing and signed with an authorized signature by the party to be

charged with the agreement, contract, or promise.   *Browbark II LP v. Bay Area Floorcovering &*

*Design, Inc. et al*. Michigan Court of Appeals Case No. 296660, Decided May 31, 2011. There

are no assignments under Michigan law in **Exhibit 1-3**.

70.

Here, the debt assignment(s) occur through the Cavalry "Bill of Sale and Assignment"

agreements between Cavalry and Citibank, with no evidence showing the specific assignment of

the specific debt(s) from the Original Lender to Cavalry SPV.   The state and local court

pleadings containing Cavalry's bare assertion of the sale and assignment is insufficient to

establish factual support for plaintiff's claim that it acquired the STATE defendant's account by

assignment.   See *Unifund CCR Partners v. Nishawn Riley*, Michigan Court of Appeals Case No.

287599, February 18, 2010.

71.

In violation of the FDCPA and RCPA, the material misrepresentations of the Defendants

go to the heart of the consumer's due process right to defend themselves against a lawsuit. The

actions to falsify debt verifications, to have Attorneys verify pleadings they have not been

reviewed or read that don't follow the Michigan Court Rules on pleadings is purposeful

misrepresentation on the part of Defendants to eliminate the legal rights and defenses of debtors

and to prop up false Default Judgments in Michigan Courts. There are no assignments under

Michigan law in **Exhibit 1-3**.

72.

The M.C.L. §  339.904 (2) states that:

(2) A person is not subject to the licensing requirement of subsection (1) if the person's

collection activities in this state are limited to interstate communications. This subsection does

not exempt a person from other requirements of law that regulate collection practices.

Defendants are not exempt from the regulations of the MOC.

74.

M.C.L. §  339.915a(f); MSA 18.425(915a) (f) provides that a licensee under the MCPA is

prohibited from "soliciting, purchasing, or receiving an assignment of a claim for the sole

purpose of instituting an action on the claim in a court."  CPS is the Servicer and Collector for

CAVALRY and in the state complaints at **Exhibit 1-3**, Defendants like Defendant Roosens

violate Michigan law in filing collection law suits for Cavalry Plaintiffs at **Exhibit 1-3**.

74.

The loan contracts are assigned to Defendant Roosen by CPS and CAVALRY to file

Breach of Contract/Account Stated collection actions.   MCL 339.901(e) states that, "Creditor or

principal shall not include a person who receives an assignment or transfer of a debt solely for

the purpose of facilitating collection of the debt for the assignor or transferor.  As CAVALRY,

CPS and the Defendant law firm is "an entity that receives a debt in default for the purpose of

collecting the debt is not a creditor and is therefore a debt collector/collection agency subject to

the act."

75.

If as Defendants claim that they are suing Plaintiff consumers with the original lender

(CITIBANK) assigning them the debt, then Defendants were assigned the Defaulted Credit Card

Debt to file legal collection claims against Michigan debtors in collection lawsuits *for the*

*purpose of "facilitating collection of the debt for the assignor or transferor."* Please see **Exhibit 1-3**.

76.

Defendants did not have standing to bring these collection lawsuits under the following provisions of the Michigan collection practices act M.C.L. § 339.901 et seq.;  MSA 18.425(901) et seq.  that prohibit the following actions by a licensed collection agency:

(b)  Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another.

(d)  Employing or retaining an attorney to collect a claim.   A licensee may exercise authority on behalf of a creditor to employ the service of an attorney if the creditor has specifically authorized the collection agency in writing to do so and the licensee's course of conduct is at all times consistent with a true relationship of attorney and client between the attorney and the creditor. After referral to an attorney, the creditor shall be the client of the attorney, and the licensee shall not represent the client in court.   The licensee may act as an agent of the creditor in dealing with the attorney only if the creditor has specifically authorized the licensee to do so in writing.

(f)  Soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court.   [MCL 339.915a(b), (d), and (f).

77.

Additionally, Defendant Roosens are violating the following Michigan Statute created to prevent the combination of attorneys and collection agencies being housed in the same office (an attorney law firm is mentioned in the complaints at **Exhibit 1-3**:

**339.915a Licensee; additional prohibited acts.**

Sec. 915a.

A licensee shall not commit any of the following acts:

(a) Listing the name of an attorney in a written or oral communication, collection letter, or publication.

(b) Furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another.

(c) Sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender.

(d) Employing or retaining an attorney to collect a claim.

78.

Defendants are violating 339.915a (a), (b), (c), (d) and (f) as demonstrated by the state collection lawsuits at **Exhibit 1-3**.

## VII. CLASS ACTION ALLEGATIONS

79.

Plaintiffs reallege the above pleadings.

80.

Plaintiffs brings this lawsuit as a class action. Plaintiffs tentatively define two classes including all persons in the State of Michigan who, during the one year (FDCPA) and six years (RCPA) and (MOC) prior to the filing of this complaint were the victims of "Cavalry Lawsuits" filed by Defendants in violation of Federal and State law.

81.

The FDCPA Class consists of all persons with a Michigan address that are subject to the the Defendants collection lawsuits in violation of § 1692e, § 1692e (10), 1692e (5), § 1692e (2)(A) 1692e (3), § 1692f and §1692d.

82.

The RCPA and MOC Class consists of all persons with a Michigan address that have received Defendant collection lawsuits in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (5), § 1692e (9), §1692f, § 1692d, MCL 339.915(a), 339.915(b), 339.915(d), 339.915(e), 339.915(f), 339.915(n), 339.915(q), 339.915a(d) 339.915(f), MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).

83.

There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with the collection of a debt violates the FDCPA, MOC and RCPA.

84.

There are no individual questions here. All Michigan class members receive the same or similar "Cavalry/CPS Network Lawsuits" with false allegations and missing debt assignments and proof that are filed in violation of the FDCPA, MOC and RCPA.

85.

Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to vigorously litigating this matter. They are greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, they have retained counsel experienced in litigating the FDCPA, MOC and RCPA, consumer advocacy and class claims. Neither Plaintiffs nor their counsel has any interests which might cause them to not vigorously pursue this claim.

86.

Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories out of **Exhibits 1-6.**

87.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who are subject to this practice and policy of Defendant undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate

claims against Defendants is small because the maximum damages in an individual action are $1,000. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

88.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)     The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

(b)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

89.

There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.   The predominant questions are:

a. Whether defendants had a practice of using "Cavalry/CPS Lawsuits" with no debt proof or debt assignment proof against Michigan residents in violation of the FDCPA without meaningful file or case review by the Network Attorneys.

b. Whether doing the above violated the FDCPA, MOC and RCPA.

90.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

91.

Plaintiffs request certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

## VIII. CLAIMS FOR RELIEF

### Count 1-Fair Debt Collection Practices Act

92.

Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.    Defendants violated 15 U.S.C. 1692e and 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection lawsuits and using the collection methods exemplified by misrepresentations in *Exhibits 1-3* which are material to due process and the response of the consumer who is being; and

b.    Defendants collected on the debt and violated 15 U.S.C. 1692f (1) by designing and furnishing the "Collection Lawsuits" at *Exhibit 1-3* knowing that such a format would be used to create the false belief in the Plaintiffs and Michigan Courts that a lawsuit was supported by a legally recognized and non-hearsay documentation when in fact, such is not the case as stated above; and

c.    Defendant seek to collect on the debt and violated 15 U.S.C. 1692f with no proof, chain of title or transfer, authorization or card holder agreement to collect any amount, interest, fee or any charges in the "CAVALRY Lawsuits" (*Exhibit 1-3*); and

d.    Defendants collected on the debt and violated 15 U.S.C. 1692e (5) by designing and

furnishing false and hearsay proof and false evidence of a debt ownership at *Exhibits 1-3* to

falsely accuse, threaten and sue the Plaintiffs without the necessary proof and in violation of both

the FDCPA and applicable Michigan Court Rules; and

    e.   The Defendants violated 15 U.S.C. §1692e(2)(A) in falsely representing that a collection

lawsuit and judgment is falsely supported by the "CAVALRY" Assignments of the SPECIFIC

debtor's debt or collection rights as stated above; and

    f.   Defendant Cavalry and Defendant Attorneys violated 15 U.S.C. 1692e and 15

U.S.C. 1692e (3) by approving and verifying false lawsuits where there is no

meaningful involvement by the attorney other than signing something the attorney has

not read or had a meaningful involvement of the specific file as the Plaintiffs as stated above. See

**Exhibit 1-3** computer template lawsuits as proof.

    **Wherefore**, Plaintiff seeks judgment against Defendant for:

a.   Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B).

**Please see 4-6 regarding damages**; and

b.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3) with a judicial

review; and;

c.   Actual Damages in the form of the required elevated responses, stress, and out of pocket

    costs of having to respond to a false debt collection lawsuit under MCL 600.2145); and

d.   Such further relief as the court deems just and proper

### Count 2-Michigan Collection Practices Act

93.

    Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are

not necessarily limited to, the following:

a.      Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive

method to collect a debt, using **Exhibits 1-3** as mentioned above;

b.      Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or

deceptive statement or claim in a communication to collect a debt or concealing or not

revealing the purpose of a communication when it is made in connection with collecting a

debt at (*Exhibits 1-3);* and

c.      Defendants violated MCLA 445.252(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)      The legal status of a legal action being taken or threatened.

(ii)     The legal rights of the creditor or debtor at (*Exhibit 1-3*);

d.      Defendants violated MCLA 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee by continuing to seek unauthorized

advances not authorized under the mortgage contract of Michigan Consumers for six

years through forms (*Exhibits 1-3);* and

e.      Defendants violated MCLA 445.252(b) by creating false documents designed to

simulate the appearance of judicial process or appearance (*Exhibits 1-6)* and

f.      Defendants violated MCLA 445.252(a) by communicating with debtors in a

deceptive manner (*Exhibit 1-6).*

**Wherefore**, Plaintiffs seeks judgment against Defendants for:

a.      Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful

violation, pursuant to M.C.L. 445.257(2);

b.       Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but

not limited to, a declaration that defendant's debt collection practices violated the RCPA,

as well as an injunction, enjoining Defendants from using (*Exhibits 1-3*) which violates

Michigan law; and

c.      Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial

sanction.

d.      Actual Damages in the form of the required elevated responses, stress, and out of pocket

costs of having to respond to false debt collection lawsuits under MCL 600.2145 *(Exhibit*

*4-6)*.

## Count 3- MOC ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE

## RELIEF

93.

Defendants have violated the MOC and is collecting debts in Michigan without

regulation and a license and has further violated the MOC, but are not necessarily limited to, the

following:

a.      Defendants violated MCL 339.915(n) by using a harassing, oppressive, or abusive

method to collect a debt, using **Exhibit 1-3** as mentioned above;

b.      Defendants violated MCL 339.915(e) Making an inaccurate, misleading, untrue, or

deceptive statement or claim in a communication to collect a debt or concealing or not

revealing the purpose of a communication when it is made about collecting a debt at

**Exhibit 1-3**; and

c.      Defendants have violated MCL 339.915(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)      The legal status of a legal action being taken or threatened.

(ii)      The legal rights of the creditor or debtor at **Exhibit 1-3**; and

d.      Defendants have violated MCL 339.915(d) by using forms that may otherwise induce the

belief that they have judicial or official sanction is involved such as **Exhibit 1-3**; and

e.  Defendants have violated MCL 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee that is not regulated by the MOC as alleged above; and

f.  Defendants have violated MCL 339.915(a) by communicating with a debtor in a misleading or deceptive manner such as the use of **Exhibit 1-3** as alleged above in creating the plan and scheme to sue on debts NCSLT or Defendants have no proof to pursue SPECIFIC to the DEBTOR sued; and

g.  Defendants have violated MCL 339.915a(a) by listing the name of an attorney in a written or oral communication, collection letter, or publication such as **Exhibit 1-3**; and

h.  Defendant Roosen has violated MCL 339.915a(b) by furnishing legal advice, or otherwise engaging in the practice of law, or representing that the person is competent to do so, or to institute a judicial proceeding on behalf of another such as **Exhibit 1-3**; and

i.  Defendant Roosen has violated MCL 339.915a(c) by sharing quarters or office space, or having a common waiting room with a practicing attorney or a lender (**Exhibit 1-3**); and

j.  Defendants have violated MCL 339.915a(d) by employing or retaining an attorney to collect a claim. **See Exhibits 1-3**; and

k.  Defendants have violated MCL 339.915a(f) by soliciting, purchasing, or receiving an assignment of a claim for the sole purpose of instituting an action on the claim in a court as shown through the scheme and plan above and through **Exhibits 1-3**.

**Wherefore**, Plaintiff seeks judgment and INJUNCTIVE RELIEF against Defendants for:

a.  Actual damages based on the illegal interests and costs Defendants charged of each Plaintiff, pursuant to M.C.L. 339.916(1). Triple Actual damages if the Court finds Defendants' scheme and plan alleged above as willful non-compliance. M.C.L. 339.916(2); and

b.      Equitable, declaratory and injunctive relief pursuant to M.C.L. 339.916(1) to stop the plan

and scheme of defendants as alleged above using (**Exhibits 1-3**); and

c.      Reasonable attorney's fees and court cost pursuant to M.C.L.339.916(2) with judicial

sanction and Injunctive Relief.

d.      Actual Damages in the form of the required elevated responses, stress and out of pocket

costs of having to respond to false debt collection lawsuits from defendants. **Please see**

**Exhibit 4-6**.


### IX. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

January 10, 2018

/s/ Nicholas A. Reyna
NICHOLAS A. REYNA (P68328)
Attorney for Plaintiffs
528 Bridge St. Suite 1A
Grand Rapids, MI 48076
nickreyna7@hotmail.com


/s/Brian P. Parker
BRIAN P. PARKER (P48617)
Co-Counsel Attorney for Plaintiffs
4301 Orchard Lake Road, STE 180-208
West Bloomfield, MI 48323
(248) 342-9583
brianparker@collectionstopper.com