UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jil Gordon et al.,

    Plaintiffs,

v.                                      Case No. 18-10148

Cavalry SPV I, LLC et al.,            Sean F. Cox
                                           United States District Court Judge

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR JUDGMENT ON THE PLEADINGS**

In late 2017, Defendant Cavalry SPV I, LLC sued three individuals in state-court, seeking to collect on debts they allegedly owed to Citibank that Cavalry had purchased in bulk. In turn, those individuals have now sued Cavalry, its servicing arm, and its attorneys, alleging that the debt-collection suits were false and deceptive, in violation of the Fair Debt Collection Practices Act, the Regulation of Michigan Collection Practices Act, and the Michigan Occupational Code. Defendants have moved for judgment on the pleadings.

For the reasons below, the Court shall grant Defendants' motions. Although Plaintiffs' complaint contends that the state-court debt-collection suits were the product of falsehoods and misrepresentations, they have failed to offer any well-pleaded *factual* allegations, rather than conclusory allegations and legal conclusions, to allow the Court to reasonably infer that Defendants violated the FDCPA.

**BACKGROUND**

This is a debt-collection dispute between several parties. Plaintiffs–Jil Gordon, Marcy

1

Goyette, and Wendell Schuemann–are all Michigan residents. Complaint, ¶ 11. They have sued four Defendants–Cavalry SPV I, LLC, its servicing arm Cavalry Portfolio Services, LLC, law firm collection agency Roosen, Varchetti & Olivier, PLLC, and one of the firm's partners, Richard Roosen. *Id*. at ¶¶ 12-15. Plaintiffs generally allege that Defendants are mutually engaged in the filing of false collection lawsuits for false amounts against Michigan debtors. *Id*. at ¶ 2.

More specifically, Plaintiffs allege that Calvary's principal business is the collection of debts. *Id*. at ¶ 47. To this end, it purchased a large portfolio of defaulted debt from Citibank. *Id*. When Calvary makes a purchase such as this one, it receives a computerized summary of the debts included in the portfolio, although the purchase agreements disavow responsibility for the accuracy of the included data. *Id*. at ¶ 51. Plaintiffs allege that this information that Cavalry receives is insufficient to establish the validity of the debts Plaintiffs purportedly owe, the calculation of the claimed balance, or that they, as the consumers, even owe the debt. *Id*. at ¶ 53.

Despite this deficiency, when Cavalry receives the debt portfolio, it then provides the information to Michigan attorneys, such as the Roosen firm, to file lawsuits to collect on the debts. *Id*. at ¶ 49, 53. The full and complete purchase/sale agreements from the debt-portfolio purchase are never attached to those suits. *Id*. at ¶ 51. Nor do the suits include proof that Cavalry is the owner of the sued-upon debt. *Id*. at ¶ 54, 64. In fact, the suits are merely "computer template" collection suits that lack meaningful attorney review by the attorneys (Roosen and the Roosen law firm here) that sign them. *Id*. Plaintiffs allege that Cavalry's only intent in filing these suits is to obtain a default. *Id*. at ¶ 53.

All three Plaintiffs are parties to debt-collection suits filed by the Roosen firm on behalf

of Cavalry SPV I, LLC. Complaint, Ex. 1-3. The complaints in those suits were nearly identical, differing only in the listed account numbers and the amounts owed. *Id*. They stated:

> 1. Defendant(s) entered into a Contract with Plaintiff or Plaintiff's Assignor, the account/loan number of which is: [account number], and pursuant to MCR 2.113(F)(1)(b) Plaintiff's claim is based on a written instrument which is not attached as it is in the possession of the adverse party.
>
> 2. Defendant(s) defaulted under the terms and conditions of the Contract.
>
> 3. Plaintiff and/or its assignor(s) completed performance under the terms and conditions of the Contract.
>
> 4. That statements were sent to the Defendant(s) detailing the amount owed on the account and Defendant(s) has failed to object to said statements.
>
> 5. The account has been stated and/or is open between the parties.
>
> 6. As a result of Defendant's default Plaintiff claims breach of contract, open account, account stated, and/or unjust enrichment.
>
> 7. The current claim amount due and owing by Defendant(s) to Plaintiff is [debt amount] plus interest, costs and attorney fees.

*Id*. The complaints all requested judgment in the amount of the debt owed plus allowable costs, attorney fees, and interest. *Id*.

Each complaint was accompanied by several exhibits. First, a bill of sale of assignment, identical across complaints except for the listed dates, that stated:

> THIS BILL OF SALE AND ASSIGNMENT dated [date], is by Citibank, N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD 57117 (the "Bank") to Cavalry SPV I, LLC, organized under the laws of the State of Delaware, with its headquarters/principal place of business at 500 Summit Lake Drive, Suite 400, Valhalla, NY 10595 ("Buyer").
>
> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 22, 2016, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the

>Accounts described in Exhibit 1 and the final electronic file.

*Id*. These bills were signed by a Citibank official. *Id*. Each bill was also accompanied by an exhibit describing the accounts assigned–here, the bulk-debt portfolios. *Id*. And each complaint was accompanied by documentation from Citibank, specific to each Plaintiff, listing the account information and the debt-amount due for the specific Citibank accounts at issue. *Id*.

Despite this documentation, Plaintiffs allege that the complaints are silent on the authenticity of the documents from Citibank. Complaint, ¶ 57. And they allege that the debt-collection suits are merely hearsay computer-generated complaints, identical to others filed by the Roosen firm, that lack any proof that Cavalry owns the specific debt sued upon. *Id*. at ¶¶ 57, 59, 61. Indeed, Plaintiffs allege that the suits against them are just three examples of the suits that the Roosen firm has filed throughout the state with no assignments, debt proof, or evidentiary documents specific to the debt of the debtors sued. *Id*. at ¶ 62. The suits all seek false debt amounts without properly authenticated copies of the relevant bill of sale, credit cardholder agreement, or other document evidencing and authorizing the amount sought. *Id*. at ¶ 63. And here, absent the false allegations and missing paperwork, there is no proof that Cavalry had the right to sue Plaintiffs for the credit card debts. *Id*. at ¶ 67. The attachments to the state-court pleadings are insufficient to establish factual support for Cavalry's claim that it acquired Plaintiffs' accounts by assignment. *Id*. at ¶ 70. Indeed, Plaintiffs allege that there was no valid assignment between Citibank and Cavalry for the specific debt sued upon. *Id*. at ¶ 68.

In light of the above, Plaintiffs have filed suit against Defendants, alleging a litany of violations of the FDCPA, including:

- (a) Using false, deceptive, and misleading representations and means in

connection with the collection lawsuits, violating 15 U.S.C. §§ 1692e, 1692e(10)

- (b) Designing and furnishing the lawsuits against Plaintiffs while knowing that the format used would create the false belief in Plaintiffs and the courts that the suits were supported by legally recognized and non-hearsay documentation, which was not the case, violating § 1692f(1)

- (c) Seeking to collect on a debt with no proof, chain of title or transfer, authorization or card holder agreement, violating § 1692f

- (d) Designing and furnishing false and hearsay proof and false evidence of a debt ownership to falsely accuse, threaten, and sue Plaintiffs without the necessary proof, violating § 1692e(5)

- (e) Falsely representing that a collection lawsuit and judgment is supported by the assignment of Citibank debt to Cavalry, violating § 1692e(2)(A)

- (f) Approving and verifying false lawsuits where there is no meaningful involvement by the attorney other than signing something that the attorney has not read, violating § 1692e, § 1692e(3).

Plaintiffs also allege that Defendants' conduct violated a multitude of provisions under Michigan's Regulation of Collection Practices Act and the Michigan Occupational Code.

Defendants have moved for judgment on the pleadings (Doc. # 11, 13) and Plaintiffs have responded (Doc. # 22, 23). The Court held a hearing on these motions on July 19, 2018.

**STANDARD OF DECISION**

Motions for judgment on the pleadings under Rule 12(c) are adjudicated under the same standard as those under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007).

That rule provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

The parties' briefs revolve around a central dispute: Whether the complaint alleges that Defendants failed to provide sufficient proof to accompany their lawsuits (as Defendants contend) or whether it alleges that Defendants lacked sufficient proof to support their debt-collection claims altogether (as Plaintiffs contend). This distinction matters. The former theory–inadequacy of proof–is not actionable under the FDCPA, *Harvey v. Great Seneca Fin. Corp.* 453 F.3d 324, 333 (6th Cir. 2006) ("[A] debt may be properly pursued in court, even if the debt collector does not yet possess adequate proof of its claim."), whereas the latter theory–absence of any proof–could be. *See, e.g.,* 15 U.S.C. § 1692e (prohibiting the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt."); § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). And although the parties cast their dispute as black and

6

white–arguing the complaint only alleges one theory or the other–the reality is more grey; Plaintiffs' complaint alleges both that Defendants failed to accompany their lawsuits with sufficient proof and that they lacked it altogether.

As to the former, the complaint is replete with allegations addressing the amount of proof, or rather the lack thereof, that Defendants provided when they filed their debt-collection suits against Plaintiffs. *See, e.g.*, Complaint, ¶ 59 ("The lawsuits filed by the Roosen Defendants are all the same, have the same or similar paperwork attached and all lack any proof that CAVALRY owns the specific debt being sued upon."); *id*. at ¶ 51 (alleging Defendants failed to attach full and complete purchase/sale agreements to the lawsuits); *id*. at ¶ 60 (alleging Defendants failed to attach credit card agreements to the lawsuits); *id*. at ¶ 61 (alleging Defendants filed the lawsuit without any non-hearsay or independent proof of the amount owed to them). But these allegations, even read in Plaintiffs' favor, cannot support an FDCPA claim since they are nothing more than a challenge to the sufficiency of the proof accompanying Defendants' suits against Plaintiffs. *See Harvey*, 453 F.3d at 333.

Yet this is not all that Plaintiffs allege. They also take issue with what they contend was the filing of false collection lawsuits against them, generally alleging a garden variety of different falsities or misrepresentations. For instance, they contend that Defendants lacked ownership of the debts sought, misrepresented the debt-amount owed, and pursued debts that were not authorized by any agreement. Any of these allegations could, if supported by well-pleaded facts, state a claim under the FDCPA. *See Delawder v. Platinum Fin. Servs. Corp.*, 443 F.Supp.2d 942, 947 (S.D. Ohio 2005) (observing that courts have recognized FDCPA claims that are based on misrepresentations of the debt amount or the debt collector's legal claim to the

debt).

But well-pleaded facts are exactly what Plaintiffs lack. Their complaint is rife with conclusory statements and legal conclusions masquerading as factual allegations, but it is bereft of any *factual content* that would allow the Court to reasonably infer liability. *See Iqbal*, 556 U.S. at 678. For example, the complaint produces a parade of falsities, alleging that Defendants: file "false collection lawsuits for false amounts," Complaint ¶ 2; seek "false debt amounts," *id*. at ¶ 63; seek default judgments on "the merits of a false complaint, false pleading, and false debt amounts," *id*. at ¶ 65; make "false allegations," *id*. at ¶ 67; take "actions to falsify debt verifications," *id.* at ¶ 71; and design and furnish "false and hearsay proof and false evidence of a debt ownership." *Id*. at ¶ 92d. But despite all these claims of mendacity in the debt-collection suits, there are no well-pleaded *factual allegations* that could allow the Court to infer the same.

Indeed, consider what Plaintiffs could have alleged to support their claims: That they did not have accounts with Citibank; that the accounts at issue were fraudulently opened; that they did not incur a debt to Citibank; that their debt to Citibank was not included in the debts Cavalry purchased from Citibank in bulk; that the debt-amounts listed were inaccurate; that Cavalry sought unauthorized interest, fees, or charges; or that Cavalry sued the wrong persons. Any single one of these factual allegations could state a claim under the FDCPA. And if the debt-collection suits were as infested with falsehoods as Plaintiffs claim, surely some factual allegations of this nature would have been included in the complaint. But they were not, and Plaintiffs have not explained their absence. Under Rule 8, Plaintiffs' vague, generalized allegations of falsehoods cannot stand in for well-pleaded factual allegations. With this in mind, the Court turns to Plaintiffs' specific claims.

## I. False, Deceptive, and Misleading Representations

First, Plaintiffs generally allege that Defendants violated § 1692e (using false, deceptive, or misleading representations or means in connection with the collection of any debt) and § 1692e(10) ("use of any false representation or deceptive means to collect or attempt to collect any debt"). "Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

Plaintiffs have not plausibly alleged that the least sophisticated consumer would have been misled by Defendants' filing of the debt-collection suits. The state-court complaints alleged that Plaintiffs owed a debt on a specific account and stated the amount owed. What's more, the complaints went beyond the bare minimum by including supporting documentation as to Plaintiffs' Citibank debts and the assignments of those debts to Cavalry. The least sophisticated consumer standard assumes that these complaints and supporting exhibits were read in their "entirety, carefully, and with some elementary level of understanding." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007). And read as a whole, these documents did not mislead. *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 595 (6th Cir. 2009) (holding a complaint did not mislead when read as a whole). Indeed, Plaintiffs have not denied that they owed a debt or that Cavalry misstated or misrepresented the amount owed. *See id.*; *Harvey*, 453 F.3d at 332 ("Harvey never denied in her complaint that she owed Seneca a debt, nor did she claim that Seneca and Javitch misstated or misrepresented the amount that she owed."). And any conclusory, non-factual allegations as to various misleading falsehoods in the debt-collection suits do not state a claim.

9

**II. Absence of Legally Recognized and Non-Hearsay Documentation**

Next, Plaintiffs allege that Defendants violated § 1692f(1) by designing and furnishing the debt-collection suits while knowing that the format they used would mislead Plaintiffs into believing that the suits were supported by legally recognized and non-hearsay documentation, even though that was not the case. Section 1692f(1), however, only prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." And Plaintiffs never allege that the amounts sought in the debt-collection suits were not authorized by their contracts with Citibank or that Cavalry sought interest, fees, charges, or expenses not authorized by those contracts. Nor do Plaintiffs cite any law prohibiting recovery of the amounts sought. Their conclusory allegation that the debt-collection suits were not supported by legally recognized proof is no substitute.

**III. Seeking to Collect on Debts with No Proof**

Plaintiffs' third claim contends that Defendants sought to collect on the debts "with no proof, chain of title or transfer, authorization or card holder agreement to collect any amount, interest, fee or any charges," in violation of § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). On its face, this appears to be a claim that the debt-collection suits were not accompanied by any proof, which, again, is not actionable. *Harvey*, 453 F.3d at 333. But, even if this claim is read more charitably, construed as a contention that no proof exists, it still fails. Not only have Plaintiffs not pleaded any facts specific to their § 1692f claim, *see Christy v. EOS CCA*, 905 F.Supp.2d 648, 656 (E.D. Penn. 2012) ("A complaint will be deemed deficient under [§ 1692f] if it does not identify any

misconduct beyond which plaintiffs assert violate other provisions of the FDCPA."), but their argument that no proof exists is met with a familiar reply: It is unsupported by any well-pleaded factual allegations. Thus, this claim fails.

## IV. Threatening to Sue Plaintiffs Without the Necessary Proof

Next, Plaintiffs reiterate their allegation that Defendants designed and furnished "false and hearsay proof and false evidence of debt ownership." This time, however, they allege Defendants violated § 1692e(5), which prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

Plaintiffs correctly note that lawsuits and court filings can be a threat under the FDCPA. *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014). But for a lawsuit to violate the FDCPA, it must be *unlawful*. *See id*. (holding that allegations that the defendant filed and maintained an *invalid* lien for a month stated a claim under § 1692e(5)); *see also Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'"). And Plaintiffs have not alleged any well-pleaded facts to show how the suits here were unlawful. At most, they contend that Defendants filed them with the sole intent to obtain default judgments. But these allegations are merely speculative and, in any event, § 1692e(5) "does not prohibit debt collectors from filing a collection lawsuit without intending to go to trial." *St. John v. Cach, LLC*, 822 F.3d 388, 391 (7th Cir. 2016). So, this claim fails.

## V. Falsely Representing that the Suits were Supported by Assignments

Plaintiffs' fifth claim alleges that Defendants falsely represented that the state-court suits were supported by valid assignments of the debts sued-upon from Citibank to Cavalry, in

violation of § 1692e(2)(A) (prohibiting the false representation of "the character, amount, or legal status of any debt"). Under Michigan law, "rights can be assigned unless the assignment is clearly restricted." *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004). A valid assignment requires a written instrument that clearly reflects the assignor's intent to vest in the assignee a present right to thing assigned. *Id*. at 463 ("[U]nder Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer 'the thing' to the assignee."). The assignee then "stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Id*. at 462.

The documents attached to the complaint rebut Plaintiffs' unsupported legal conclusion that no assignment occurred. Each debt-collection complaint was accompanied by a Bill of Sale and Assignment, signed by a Citibank official, stating, "the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 and the final electronic file." This written language clearly and unambiguously manifests Citibank's intent to transfer the relevant accounts. *Id*. at 464 ("[T]he law presumes that the parties understand the import of a written contract and had the intention manifested by its terms."). That is all that required to show a valid assignment. *See id*. ("[W]hen the language of a document is clear and unambiguous, interpretation is limited to the actual words used.").

None of the legal arguments couched as allegations in the complaint rebut this conclusion. First, Plaintiffs insinuate that the assignment did not comply with Michigan's statute of frauds because no representative from Cavalry signed it. Complaint, ¶ 69. This is incorrect.

12

Michigan's statute of frauds only requires the assignment to be signed "by the party to be charged" with the agreement or promise. *See Burkhardt*, 680 N.W.2d at 463, quoting M.C.L. § 566.132(1)(f). Here, that party was Citibank, so no signature from Cavalry was required.

Second, Plaintiffs contend that the Bill of Sale and Assignment contained "no evidence showing the specific assignment of the specific debt(s) from the Original Lender to Cavalry SPV." Complaint, ¶ 70. But this is nothing more than an allegation that Cavalry filed the debt-collection lawsuit with insufficient proof of the assignment, which cannot support an actionable FDCPA claim. *Harvey*, 453 F.3d at 333.

To be sure, Plaintiffs are correct that the exhibits attached to the state-court complaints painted an incomplete picture. Although they show a valid assignment of certain accounts by Citibank to Cavalry, and show the existence of a debt owed to Citibank by Plaintiffs, the exhibits do not show that those specific debts were included in the accounts sold and assigned by Citibank to Cavalry. But Cavalry was not required to attach this information to its state-court complaints, *id.*, and Plaintiffs have not alleged that their specific debts were *not included* in the debt-portfolio sold by Citibank to Cavalry. Indeed, they have not pleaded *any facts* tending to show that no valid assignment occurred. Instead, all they offer is the bare legal conclusion that the assignment was invalid. But, that is not the case, and it is not enough to state a claim.

## VI. No Meaningful Involvement by Attorney

Finally, Plaintiffs allege that Defendants violated § 1692e and § 1692e(3) (prohibiting "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney.") when the Roosen firm approved the debt-collection suits without reading them or having any meaningful involvement with the specific files.

13

The text of § 1692e(3) contemplates a straightforward realm of violations–when a debt-collector or other individual deceptively represents that he is an attorney or that a communication is from an attorney. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008) (leaving to the jury the question of whether a "letter gives the impression that it is from an attorney even though it is not."). This also includes situations in which the complaint alleges that no attorney had any meaningful involvement in drafting letters that could give the least sophisticated consumer the impression that they were from an attorney. *See, e.g., Thompke v. Gabrizio & Brook, P.C.*, 261 F.Supp.3d 798, 808 (E.D. Mich. 2017); *Martin v. Trott Law, P.C.*, 198 F.Supp.3d 794, 804 (E.D. Mich. 2016).

Plaintiffs' claim, however, is cut from a different cloth. It does not concern the sending of misleading letters, but the filing of debt-collection suits, which the Roosen firm assuredly filed. Yet Plaintiffs still claim Defendants violated § 1692e(3), contending that Roosen and his firm had no meaningful involvement in the suits, instead essentially rubber stamping them at Cavalry's behest. The Court is skeptical that this can amount to a violation of § 1692e(3) since the suits were signed and filed by an attorney. But even if it could, Plaintiffs' claim lacks the needed factual support. Their most tangible allegation is that Roosen filed the suits without reading the cardholder agreements. Complaint ¶ 61. But the suits specifically alleged that those agreements were in the adverse party's possession and, as such, the agreements were not required to be attached to the complaint. *See* M.C.R. 2.113(F)(1)(b) (providing a written instrument need not be attached to the complaint if it is "in the possession of the adverse party and the pleading so states"). Aside from that, Plaintiffs either complain about the absence of proof accompanying the lawsuits (a familiar refrain that offers no relief) or offer mere

14

speculation, declaring the lack of meaningful involvement without any well-pleaded facts to show the same. These allegations cannot sustain a § 1692e(3) or § 1692e claim.

## VII. State Law Claims

This leaves only the state-law claims, which Defendants also urge the Court to dismiss with prejudice. *See In re Repository Techs., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010) ("[W]hen a state-law claim is clearly without merit, it invades no state interest–on the contrary, it spares overburdened state courts additional work that they do not want or need–for the federal court to dismiss the claim on the merits rather than invite a further, and futile, round of litigation in the state courts."). The Court will do so, as Plaintiffs claims under the MCPA and the MOC, like their FDCPA claims, lack merit.

First, as to the MCPA claims, Plaintiffs concede that they are based on the same set of facts as the FDCPA claims. MCPA claims that "simply duplicate" the FDCPA claims "need not be addressed separately." *Newman v. Trott & Trott, P.C.*, 889 F.Supp.2d 948, 967 (E.D. Mich. 2012). So, the Court shall dismiss the MCPA claims.

Second, as to Plaintiffs' myriad of MOC claims, the provisions cited do not apply to Cavalry or the Roosen Defendants. Each MOC provision Plaintiffs rely upon apply to licensees. M.C.L. §§ 339.915, 915a. The Code requires collections agencies to be licensed, M.C.L. § 339.904(1), thereby making them licensees. A "collection agency" is "a person that is directly engaged in collecting or attempting to collect a claim owed or due or asserted to be owed or due another[.]" M.C.L. § 339.901(1)(b). Neither Cavalry or the Roosen Defendants fit this definition.

As to Cavalry, it filed the debt-collection suits seeking to collect on a debt owed *to Cavalry*, not another entity. So, at least for purposes of this case, Cavalry was a creditor, not a

15

collection agency. *See* M.C.L. § 339.901(1)(e) (defining "creditor" as a "person to which a debt is owed or due or asserted to be owed or due."). Thus, the MOC's prohibitions on the conduct of collections agencies as licensees do not apply.

As to the Roosen Defendants, they are "regulated persons" under the MRCPA. *See Misleh v. Timothy E. Baxter & Assocs.*, 786 F.Supp.2d 1330, 1338 (E.D. Mich. 2011) (holding the term "regulated person" includes attorneys who handle claims and collections on behalf of a client). Thus, they cannot be considered collection agencies under the MOC. *Id.* ("[A] person or entity engaged in debt collection activities is either a 'collection agency' under the Occupational Code or a 'regulated person' under the MCPA, but not both."). So, Plaintiffs' MOC claims against them also fail.

## CONCLUSION

For the reasons above, the Court ORDERS that Defendants' Motions for Judgment on the Pleadings are GRANTED.

IT IS SO ORDERED.

                                              s/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated: July 24, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 24, 2018, by electronic and/or ordinary mail.

                                              s/Karri Sandusky on behalf of
                                              Jennifer McCoy, Case Manager